**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ALLEN B.,[1]**

      **Plaintiff,**

                                    **Civil Action 2:23-cv-2040**

      **v.**                            **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Allen B. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") and denying his application for Supplemental Security Income ("SSI") for the period prior to September 5, 2021. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 10); the Commissioner's Memorandum in Opposition (ECF No. 12); Plaintiff's Reply (ECF No. 13); and the administrative record (ECF No. 7). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED**, and Plaintiff's Statement of Errors is **OVERRULED**.

### I.      BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on June 28, 2017, alleging that he became disabled on April 26, 2015. (R. 189-95, 1101-06). Plaintiff subsequently amended his alleged onset date to July 13, 2016. (*Id.* at 211). After Plaintiff's application was denied initially

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

and on reconsideration, Administrative Law Judge Nikki Hall held a telephonic hearing on

November 14, 2019, and issued an unfavorable determination on January 15, 2020, which

became final on August 20, 2020, when the Appeals Council denied Plaintiff's request for

review. Plaintiff appealed that determination, and on November 29, 2021, this Court remanded

the matter to the Commission for further proceedings. *See Baier v. Comm'r of Soc. Sec.*, No.

2:20-cv-5380, 2021 WL 7908556 (S.D. Ohio Nov. 29, 2021).

On remand, Administrative Law Judge Regina Carpenter ("ALJ"), held a telephone

hearing on January 18, 2023, at which Plaintiff, who was represented by a non-attorney

representative of the Olinsky Law Group, testified. Herman Bates, a Vocational Expert ("VE")

also testified at that hearing. On March 27, 2023, the ALJ issued a partially-favorable decision,

denying Plaintiff's DIB application and his SSI application for the period prior to September 5,

2021, but finding that Plaintiff became disabled for purposes of SSI on that date. (R. 869-87.)

Plaintiff did not file exceptions, and the Appeals Counsel did not review the ALJ's decision.

Plaintiff seeks judicial review of the that second determination. In his sole contention of

error, Plaintiff contends that the ALJ reversibly erred when relying on VE testimony to find that

he could perform jobs that existed in significant numbers prior to September 5, 2021.)

## II.    THE ALJ'S DECISION

The ALJ issued the second determination on March 27, 2023. (R. 869–87.) The ALJ

initially determined that Plaintiff met the insured status requirements of the Social Security Act

through December 31, 2020. (*Id.* at 872.) At step one of the sequential evaluation process,[2] the

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

ALJ found that Plaintiff has not engaged in substantial gainful activity since September 30, 2016. (*Id*.) At step two, the ALJ found that Plaintiff had the following severe impairments: residuals of right basal ganglia bleed and cerebrovascular accident, including left sided weakness, spasticity, left foot drop and neuropathy; left shoulder impingement syndrome and degenerative joint disease, status post total arthroplasty times two; degenerative joint disease of the right shoulder; right shoulder tendinitis; degenerative disc disease of the cervical spine; calcaneal spurs; diabetes mellitus; left homonymous inferior quadrant loss secondary to stroke with 20/20 visual acuity; restrictive lung disease due to paralysis of the left diaphragm; diabetic neuropathy; obesity; and neurocognitive disorder. (*Id*.) The ALJ also found that Plaintiff had the following non-severe impairments: hypertension; hyperlipidemia; headaches; a history of a deep vein thrombosis; medial epicondylitis and cubital tunnel syndrome of the right elbow; unspecified anxiety disorder; depressive disorder; and polysubstance abuse. (*Id.*) At step three, the ALJ found that through his date last insured, Plaintiff did not have an impairment or combination of impairments

---

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

that met or medically equaled the severity of one of the listed impairments described in 20

C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 873.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity

("RFC")[3] as follows:

> After careful consideration of the entire record, the undersigned finds that since September 30, 2016, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: a sit/stand option allowing for a change of position for 1-2 minutes every 30 minutes; must use a cane when walking; no climbing, crawling, or crouching, and no more than occasional balancing, kneeling or stooping, as those are each defined in the DOT/SCO; no overhead reaching with the left non-dominant upper extremity; no more than occasional reaching in all directions bilaterally; no more than occasional reaching, handling and fingering bilaterally; no exposure to weather; no more than occasional exposure to nonweather temperature extremes of heat or cold, wetness and non-weather humidity, vibration, or atmospheric conditions, as those are defined in the DOT/SCO; no exposure to hazards, as those are defined in the DOT/SCO; can understand, remember and carry out simple instructions; no work that requires a specific production rate pace, such as assembly line work or an hourly production quota; and can occasionally deal with changes in a routine work setting.

(*Id*. at 878.)

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as

a shipping checker, forklift driver, industrial cleaner, stock clerk, or warehouse worker or janitor.

(*Id*. at 884.) The ALJ also noted that on September 5, 2021, Plaintiff's age category changed

from a younger individual to closely approaching advanced age. (*Id*.) At step five, the ALJ relied

on VE testimony to find that, before September 5, 2021, given Plaintiff's age, education, work

experience, and RFC, jobs existed in significant numbers in the national economy that he could

perform including the representative occupations of surveillance system monitor, call out

operator, and election clerk. (*Id*. at 885 –86.) Thus, the ALJ found that before September 5,

---

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

2021, Plaintiff had not been disabled. (*Id.* at 886.) The ALJ then determined that beginning September 5, 2021—when Plaintiff's age category changed— given his age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that he could perform, and therefore, he was disabled as of that date through the date of the ALJ's decision. (*Id.*)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health and Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the

substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

Plaintiff contends that reversal is warranted because the ALJ erred by finding that jobs existed in significant numbers that he could perform prior to September 5, 2021. Specifically, Plaintiff asserts that the ALJ relied on testimony from a VE to arrive at this conclusion but failed "appropriately evaluate" the VE's testimony. (Pl's Statement of Errors 5–10, ECF No. 10.) This claim lacks merit.

At step five, an ALJ must consider a claimant's RFC, age, education, and work experience to see if a claimant who is unable to perform his past relevant work "can make an adjustment to other work." 20 C.F.R. § 404. 1520(a)(4)(v). If such a claimant can make an adjustment to other work, then the Commissioner "will find that [the claimant] is not disabled." *Id.* If, however, the claimant "cannot make an adjustment to other work," the Commissioner will find that the claimant *is* disabled. *Id.* The "other work" to which a claimant must be able to adjust "must exist in significant numbers in the national economy"—*i.e.*, "in the region where [the claimant] lives or in several regions in the country." *Id.* § 404.1560(c)(1). The burden for establishing that "other work" exists in significant numbers in the national economy rests with the Commissioner, not the claimant. *Id.* § 404.1560(c)(2).

ALJs are permitted to consider "'reliable job information' available from various publications" as evidence of a claimant's ability to do other work that exists in the national economy. S.S.R. 00–4p, 2000 WL 1898704, at * 2, (S.S.A. Dec. 4, 2000) (citing 20 C.F.R. §§

404.1566(d) and 416.966(d)). Such publications include the DOT which provides "information about jobs (classified by their exertional and skill requirements) that exist in the national economy." 20 C.F.R. §§ 416.969, 404.1569. ALJs are also authorized to consider testimony from VEs as a source of "occupational evidence." S.S.R. 00–4p, 2000 WL 1898704, at *2. Because the "DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings," a VE's testimony can be used "to provide more specific information about jobs or occupations than the DOT." *Id.* at *23.

VEs can testify about "the physical and mental demands of a claimant's past work, either as . . . actually performed [or] as generally performed in the national economy." *Id.* They can also testify about the claimant's present ability to perform that work. *Id.* ALJs are not required to consult VEs, but if they do, "the Social Security Administration imposes an affirmative duty on ALJs to ask VEs if the evidence that they have provided 'conflicts with the information provided in the DOT.'" *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (quoting SSR 00-4p (2000)). If a VE's testimony conflicts with the DOT, an ALJ can still rely on it if they "elicit a reasonable explanation for the conflict." S.S.R. 00–4p, 2000 WL 1898704, at *2. If a VE's testimony is consistent with the DOT, or the inconsistency can be resolved to justify reliance, then a VE's testimony can independently constitute substantial evidence to support an ALJ's conclusion. 20 C.F.R. § 404.1560(b)(2). This is because VE's are not bound by the DOT—the DOT's descriptions of occupations are merely advisory. *Wright v. Massaneri*, 321 F.3d 611, 616 (6th Cir. 2003).

At the January 2023 hearing, the ALJ posed various questions about the availability of jobs for a hypothetical person with Plaintiff's limitations including those available to a person with the following mental health restrictions:

> [C]an understand, remember and carry out simple instructions but there should be no work that required specific production rate pace such as assembly line work or an hourly production quota. And the person can occasionally deal with changes in a routine work setting.

(R. at 946.) In response to the ALJ's hypotheticals, the VE identified three jobs at the sedentary exertion level that could be performed by a hypothetical person with the same restrictions as Plaintiff—surveillance system monitor; call out operator; and election clerk. The VE testified as follows:

> A. . . .The surveillance system monitor has an R of 3 but the reaching, handling and fingering are not present according to their Definition. The DOT number for the surveillance system monitor is 379.367-010. The specific vocational preparation is 2. And there are approximately 8,000 surveillance system monitors in the United States economy.

(*Id.* at 947–48.)

> A. . . . The DOT lists a call out operator with only occasional reaching, handling and fingering and the DOT number for the call out operator is 237.367-014. The exertional demand is sedentary, the SVP is 2 and there are approximately 13,000 call out operators in the United States economy.

The following exchange also took place between the VE and the ALJ:

> Q. Okay, so at the sedentary level we primarily have the surveillance system monitor and the call out operator.

> A. Yes, Judge. The DOT lists an election clerk with a reasoning of 3 that has occasional reaching, handling and fingering. The DOT for the election clerk is 205.367-030. The specific vocational preparation is 2. And there are approximately 6,000 election clerks in the United States economy.

> Q. Thank you. Do these jobs also exist in multiple regions?

> A. Yes, Judge.

> Q. All Right. Now in these types of jobs that you've named, how much time off-task is generally tolerated?

> A. No more than 15 percent per day.

> Q. And what is the level of absenteeism tolerated in this type of job?

8

A. No more than two days per month.

Q. Okay. Now Mr. Bates, you indicated earlier that the DOT does not address this issue with regard to the left versus right with the, with the reaching, handling, fingering—al of that. Are there—has the testimony, your testimony otherwise been consistent with the information contained in the Dictionary of Occupational Titles?

A. Well, absenteeism and time off-task, alternating between sitting and standing is not described by the DOT. Actually, production standards are not truly addressed by the DOT. Several of the jobs that I've referenced have a reasoning level of 3 which coincides basically with approximately a 7th grade education.

Q. Right. And does the DOT address the differences in the direction no reaching—overhead versus reaching in all directions?

A. No, Judge. It does not.

Q. And what is the basis of your testimony of the effect. Of all of these limitations not addressed by the DOT or SCO on the occupational base?

A. My experience as a Vocational Rehabilitation Counselor.

(*Id*. at 950–51.)

As these excerpts demonstrate, the ALJ satisfied her duty to ask if the VE's testimony conflicted with information in the DOT. The VE indicated that some limits were not addressed in the DOT and that some occupations he identified had a reasoning level of 3, which corresponded to a seventh-grade education.[4] The ALJ then asked the VE the basis for his testimony and the VE responded that he relied on his experience as a Vocational Rehabilitation Counselor. The ALJ found that this was a reasonable basis for the VE's testimony. (R. at 886.)

---

[4] Each job in the *Dictionary of Occupational Titles* ("DOT") is assigned a General Educational Development ("GED") score, which considers the reasoning, mathematical, and language development required for satisfactory job performance. *See Dictionary of Occupational Titles*, Components of the Definition Trailer, 1991 WL 688702 (1991). Reasoning development is divided into six levels. *Id.* Reasoning Level 3 is described as follows: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Id.*

Plaintiff nevertheless argues that the ALJ erred by relying on the VE's testimony because it was wrong. Plaintiff contends that the "core issue in this matter is the VE's explanation for why GED Reasoning Level 3 jobs are congruent with the RFC limiting Plaintiff to both simple instructions and no production rate pace." (Pl's Reply 1, ECF No. 13.) Plaintiff specifically contends that the VE testified that a person limited to simple instructions could perform level 3 work because it corresponded to a seventh-grade education. (Pl's Statement of Errors 7–9, ECF No. 10; Pl's Reply 1–2, ECF No. 13.) Plaintiff further contends that this was incorrect because GED Reasoning Levels do not correspond to a worker's education. (*Id*.)

Plaintiff did not, however, object to the VE's testimony on this point or raise this issue at the hearing, and therefore, he has forfeited it. *See, e.g.*, *Lyon v. Comm'r of Soc. Sec.,* No. 1:11-cv-1104, 2013 WL 1149967, at *4 (W.D. Mich. Mar. 19, 2013) ("The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court.") (collecting cases). Although Plaintiff's non-attorney representative asked the VE questions, none of those questions probed or challenged the VE's testimony that reasoning level 3 corresponded to an education grade.

In any event, even if this issue had not been forfeited, Plaintiff misstates the VE's explanations. To be sure, the VE testified that level 3 reasoning corresponded to a seventh-grade education. But the VE also elaborated as to why the particular level 3 jobs that he identified could be performed by a person limited to simple instructions in the following exchange that took place between the VE and Plaintiff's non-attorney representative: ALJ: Thank you. Mr. Eason, do you have any additional questions?

REP: Yes, I do, Your Honor.

10

….

Q. Okay. Now you did bring up that there were two jobs that have a reasoning level of 3, so that does still fit the hypothetical? You're saying that someone could perform if they're limited to simple, to understand simple instructions—simple understand—

A. The jobs are consistent—I'm sorry. Go ahead please.

Q. Yes. The simple jobs, SVP: 2 jobs?

A. Yes. They are simple, routine and repetitive. They do deal with individuals, with people, so there is some change or variety in the work. But they're routine, repetitive—dealing with the same types of situations on a repetitive basis and doing the same type of task on a repetitive basis.

Q. Okay….

(R. at 952.) As this discussion demonstrates, the VE indicated that the level 3 jobs that he identified could be performed by a person with a simple instruction limit because they were simple, routine, and repetitive. Therefore, even assuming that the VE was incorrect, and level 3 reasoning does not correspond to a seventh-grade education, the VE testified that these particular jobs could be performed by a hypothetical person with Plaintiff's RFC.

Plaintiff also contends that the ALJ erred because the mental health restrictions included in his RFC—a limit to simple instructions with no production requirements—do not adequately account for someone limited to level 3 work. (Pl's Statement of Errors 7, ECF No. 10.) In so doing, he relies on the decision in *Joyce v. Comm'r of Soc. Sec.*, 662 Fed. App'x 430, 436 (6th Cir. 2016). Plaintiff's reliance is misplaced. The *Joyce* Court explained that the Sixth Circuit had previously held that there was a bright-line rule that "there [could] *never* be a conflict between a simple-tasks limitation and the DOT reasoning levels." *Id*. (emphasis added). But after surveying opinions from other Courts of Appeals, the *Joyce* Court clarified that there was no such "bright-line rule" and "le[ft] open the *possibility* that an ALJ might reversibly err by failing to inquire

about or resolve a conflict between DOT reasoning levels and a simple-tasks limitation." (*Id.*) (emphasis added). The *Joyce* court did not, however, conclude that there was an inherent conflict between a simple task limitation and any specific DOT reasoning level. Instead, *Joyce* only held that if ALJ erred by failing to inquire about or resolve a such possible conflicts, that error would be subject to harmless-error analysis. (*Id.*)

Such is the case here. Unlike the ALJ in *Joyce*, the ALJ here asked the VE if his testimony conflicted with the DOT. The VE indicated that some of the information he provided was not in the DOT; several of the jobs he identified had a reasoning level of 3; and that the information he provided was based on his professional experience. To the extent any unresolved conflict remained, and the ALJ was required to ask more about the level 3 reasoning requirement, the VE further testified that a person with a simple task restriction could perform the occupations he identified because they were simple, routine, and repetitive. Accordingly, to the extent the ALJ erred by failing to ask more about the level 3 requirement, any such error was harmless.

Last, Plaintiff contends that he was unable to perform any type of level 3 work because he was fired from his last job, which required level 3 reasoning. (Pl's Statement of Errors 9, ECF No. 10.) Plaintiff also cites testing results from a consultative examiner whose opinion the ALJ discounted. (*Id.*)[5] But the critical question here was whether there was any work that a person with Plaintiff's limits could perform. The VE testified that there was. "[T]he testimony of a vocational expert identifying specific jobs available in the [ ] economy that an individual with the claimant's limitation could perform can constitute substantial evidence supporting an ALJ's finding at step 5 that the claimant can perform other work." *Wilson v. Comm'r of Soc. Sec*, 378

---

[5] Plaintiff does not challenge the ALJ's evaluation of the consultative examiner's expert opinion.

F.3d 541, 549 (6th Cir. 2004) (collecting cases); *see also Moats*, 42 F.4th at 562 ("[W]hen a qualified vocational expert testifies that a person with the claimant's work experience and physical limitations could perform a significant number of jobs available in the national economy, the ALJ has a solid basis for denying disability benefits.")

## V.    CONCLUSION

For all these reasons, the Court finds that the ALJ did not commit reversible error when assessing the VE's testimony. Accordingly, the Commissioner's non-disability determination is **AFFIRMED** and Plaintiff's Statement of Errors is **OVERRULED**.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE